BETTER TASTE POPCORN COMPANY, INC. *v.* DRAKE.

[No. 18,574. Filed March 2, 1955. Rehearing denied April 15, 1955. Transfer denied June 14, 1955.]

*O'Neill, Scott & Schrenker,* of Anderson, and *Hollowell & Hamill,* of Indianapolis, for appellant.

*Lawrence Booram, Grace B. DeArmond,* of Anderson, and *Melville E. Watson,* of Greenfield, for appellee.

CRUMPACKER, J.—The appellee recovered a judgment against the appellant in the Hancock Circuit Court for the sum of $2,331 from which the appellant appeals, asserting that the verdict of the jury is not sustained by sufficient evidence and is contrary to law, and that the court erred in refusing to require the jury to answer certain interrogatories submitted to it.

The appellant is a corporation engaged in the processing, packaging and sale of popcorn to retailers, and the appellee is a farmer who owns and operates a 310-acre farm in Lafayette Township, Madison County, Indiana. On March 4, 1948, the appellant and the appellee entered into a written contract whereby the appellee agreed to plant 10 acres of his land to popcorn, cultivate and grow the same to maturity during the growing season of 1948 and, after picking, sell the entire crop to the appellant who agreed to purchase it at $5.00 per hundred weight on the cob upon delivery at the farm when called for, providing, however, said crop was then merchantable and fit for cribbing.

The following facts are undisputed: The appellee grew the 10 acres of popcorn as required by the contract. He picked it in November of 1948, but the appellant refused to accept delivery and the appellee thereupon bought a crib and stored it on his own premises. In March, 1949, one Robert Jack, appellant's agent, came to the appellee's farm and examined the popcorn stored in said crib and told him the appellant was ready to accept delivery. Jack thereupon hired a trucker who hauled three loads of said popcorn from the appellee's farm to Emporia, Indiana, where each load, truck and all, was weighed and then taken to the appellant's cribs on U. S. Highway 36 in Adams

Township, Madison County, Indiana. It was there placed on a sorting table and examined by the appellant's employees. Unacceptable ears were thrown back on the trucks and the remainder elevated into the appellant's cribs where it was commingled with popcorn of other growers. The trucks, with rejected popcorn aboard, were again weighed at Emporia and three receipts for the delivery of a total of 33,320 pounds of popcorn, representing the difference in the weight of the loaded trucks before and after sorting, were issued to the appellee. Two of these receipts contain the words "Bought of Clifford Drake, sold to Better Taste Popcorn Company." The third reads, "Bought of Clifford Drake, sold to ———," but the appellant's name appears upon the masthead of the receipt. A few weeks later the appellee received the following document from the appellant signed by Howard Davis, its president: "Received of Clifford Drake 33,320 pounds of popcorn, containing ——% damaged corn and with a total moisture content of 17.50%, which said popcorn is stored in Crib No. B, of the Better Taste Popcorn Company's cribs located on U. S. Road No. 36, farm No. 2 of the E½ of the NW-19-18-8 Adams Township, Madison County, Indiana."

In December, 1949, the appellant mailed a storage contract to the appellee by the terms of which the appellee, had he signed it, would have acknowledged that the 33,320 pounds of popcorn then in the appellant's cribs were his property and there for storage only and authorized the appellant to process and sell it when ready at a price fixed by the appellee. The appellee refused to sign this contract however and there was no further correspondence between them. When the popcorn, grown in 1948 by numerous growers and stored commingled in the appellant's cribs, was exam-

ined and tested by an entomologist in May, 1949, it was found to be infested with weevil and angoumois moth.

This action is for the contract price of 33,320 pounds of popcorn delivered to the appellant as above set out and the appellant defended on the theory that when the appellee picked the popcorn in question in the fall of 1948, its moisture content was excessive and it had a 36 per cent infestation by weevil and angoumois moth. The appellant thereupon rejected the entire crop as unmerchantable and informed the appellee that it would not accept it in discharge of the contract. Later, in March of 1949, the appellant learned that the growers with whom it had contracts were having trouble with their popcorn spoiling and, to afford them better storage facilities, in an endeavor to salvage a part of their crops, it offered them the use of its cribs for storage only. On this basis it took up the appellee's popcorn in April of 1949. There is evidence in the record tending to support this contention, but it is sharply disputed. For example: Howard Davis, the appellant's president, testified that he sent his agent, Robert Jack, to the appellee's farm to get samples of his popcorn after it had matured but before it was picked and, upon subjecting these samples to tests, they were found to be infested with moth and weevil to the extent of 36 per cent. Jack, however, testified he was not on the appellee's farm from March, 1948, when the contract was made, until March, 1949, when he went there to arrange for the hauling of the appellee's popcorn to the appellant's cribs. The appellee testified that when Davis refused to take his popcorn at picking time in 1948 he advised him to store it in his own crib and he, Davis, would take it later. Robert Jack testified that in the spring of 1948 he contracted with numerous growers for 1,500 acres of popcorn for the appellant, and in

December of that year Davis told him he was going to fulfill those contracts and "to get in all the corn I could."

On this state of the record it is our opinion that the jury was justified in concluding that the appellant did not finally reject the appellee's popcorn in the fall of 1948 as unmerchantable but, for reasons of its own, delayed delivery until April, 1949, when it accepted 33,320 pounds thereof in discharge of the contract and thereby completed the sale.

The Indiana statutes pertaining to adulterated foods, in force at the time of the transactions here involved, prohibit the sale of popcorn which is infested with insects, and any sale made in violation thereof is void. Secs. 35-3104 and 35-3103, Burns' 1949 Replacement. Assuming as we must, in view of the verdict sustained by evidence, that a sale of the popcorn in controversy by the appellee to the appellant was consummated in April of 1949, it becomes pertinent to inquire whether or not said popcorn was infested with weevil or moth at the time of said sale. If it was, the sale is void and the appellee can predicate no rights on the contract upon which he sues even if fully performed. *Hatton* v. *Casey* (1931), 93 Ind. App. 336, 178 N. E. 303.

The only direct evidence we find on this subject is the testimony of two entomologists and of Howard Davis, the appellant's president, which we have heretofore set out. The entomologists testified that an ear of popcorn, exhibited to the jury by the appellee as a typical sample of the popcorn in controversy, was then infested with weevil or moth. This was one ear out of approximately a peck of popcorn, chosen at random by the appellee from his crib shortly after the appellant refused to accept delivery in the fall of 1948, which he

had put in a cloth sack and hung in his barn where it remained until the trial of this cause four years later. All other evidence as to field infestation of the appellee's popcorn during the growing season of 1948 is largely inferrential. Russell Doty, an experienced processor, testified that there was field infestation in Madison County that year but he had never seen nor examined the appellee's popcorn. His experience was confined to areas around Tipton, Elwood, Pendleton, Markleville, Noblesville and Frankton, in all of which he found field infestation. The Frankton area, of those mentioned, is the nearest to appellee's farm which is 2½ miles southeast thereof. The infested corn Doty bought in the area came from a farm 1½ miles north of Frankton. Ralph Kem, a processor, testified that he bought popcorn in Madison County and elsewhere in central Indiana in 1948 and practically all of it was infested with moth and weevil which, in his opinion, had entered the grain in the field during the growing season. He never saw the appellee's field of popcorn, however, and had no knowledge of its condition in the field or after it was picked, nor does it appear where the popcorn he bought in Madison County came from in relation to the appellee's farm.

On the other hand, there was testimony of witnesses, who knew nothing about the detecting of weevil and moth in popcorn infested in the field, that the appellee's popcorn was merchantable when taken by the appellant in the spring of 1949. John W. Davis, entomologist for Purdue University, testified that there was no known field infestation of popcorn north of U. S. Highway 40 in 1948, and we take judicial notice that Madison County is north thereof. The testimony of Howard Davis, appellant's president, to the effect that he found appellee's popcorn infested in the fall of 1948, after it had

matured but while it was still on the stock, is disputed by the testimony of Robert Jack upon which we have heretofore commented. The infested ear of popcorn, exhibited to the jury, had hung in a sack in the appellee's barn for four years and there is no evidence that forecloses the possibility of its having become infested while there.

On this state of the record we cannot say that reasonable men are forced to the conclusion that the appellee's popcorn was unmerchantable because of excessive moisture and insect infestation when delivered to the appellant in the spring of 1949. We, therefore, consider ourselves bound by the jury's verdict on this issue.

Finally the appellant contends that the court erred in overruling its motion to require the jury to answer three interrogatories submitted to it either in the affirmative or negative rather than by the answer "no evidence" as was made to each. The first of these interrogatories reads as follows: "Do you find that in the town of Curtisville, Indiana, at a meeting where approximately 50 growers of popcorn in the year 1948, including the plaintiff, were present when Howard Davis, President of the defendant company, announced in words or in substance that he would refuse to accept plaintiff's popcorn as grown by him in 1948?" This interrogatory is unintelligible. It propounds no question and should not have been submitted to the jury.

The second interrogatory in question is as follows: "Do you find that in October 1948 the plaintiff's popcorn as grown by him contained a moisture content of 26.36 per centum?" We fail to see how an affirmative answer to this interrogatory could override the general verdict as the jury found that the

appellant accepted the appellee's popcorn in discharge of the contract in the spring of 1949, at which time its moisture content was 17.50 per cent.

The third interrogatory is as follows: "Do you find that in the month of November, 1948, the popcorn grown by Clifford Drake contained a weevil or moth infestation?" Answer: "No evidence."

However, there was some evidence on this subject as Howard Davis testified that it was so infested at that time, but there is no other evidence in the record specifically concerned with the appellee's popcorn in October, 1948. If the jury chose to disbelieve the witness there was no other answer possible. If the jury had believed Davis they should have answered "yes," but having disbelieved him they could find no evidence to support a "no" answer. We find no reversible error in the court's ruling.

Judgment affirmed.

NOTE.—Reported in 124 N. E. 2d 709.